J-A09011-19

2020 PA Super 14

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID PACHECO, | : | |
| | : | No. 151 EDA 2018 |
| Appellant | | |

Appeal from the Judgment of Sentence, November 29, 2017,
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s): CP-46-CR-0002243-2016.

BEFORE: KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY KUNSELMAN, J.:         **FILED JANUARY 24, 2020**

David Pacheco appeals from the aggregate judgment of sentence imposed following his conviction of multiple counts of possession with intent to deliver ("PWID")[1] and related offenses. Pacheco challenges the warrantless search and seizure of his real-time cell site location information (CSLI), the limitations on his expert's testimony, and the length of his sentence. After extensive review, we affirm.

The parties do not dispute the underlying facts of this case. Essentially, in 2015, the Montgomery County District Attorney's Office, Narcotics Enforcement Team, working with the DEA, uncovered a large criminal conspiracy as part of a heroin-trafficking investigation. The District Attorney's Office learned that a Mexican drug cartel was smuggling heroin into the United

---

[1] 35 P.S. § 780-113(a)(30).

* Retired Senior Judge assigned to the Superior Court.

States for distribution. They believed that Pacheco, a Norristown, Pennsylvania, resident, played a significant role in this operation by transporting drugs from Georgia to New York.

At various times throughout their nearly year-long investigation, Montgomery County prosecutors applied for and obtained several orders pursuant to Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act"). 18 Pa.C.S.A. §§ 5701-5782. Some of those orders, issued on August 28 and October 15, 2015, also included "ping" requests that specifically authorized the cell phone company to send signals to Pacheco's phone at intervals and times as directed by law enforcement. Orders, 8/28/2015 and 10/15/2015, at ¶9.[2] These signals gave investigators real-time CSLI so they would know Pacheco's location. The Montgomery County Court of Common Pleas issued those orders under Subchapter E of the Wiretap Act, which authorizes the collection of mobile communication tracking information in limited circumstances. 18 Pa.C.S.A. §§ 5771-5775.

"Mobile communications tracking information" is defined by the Wiretap Act as "[i]nformation generated by a communication common carrier or a communication service which indicates the location of an electronic device supported by the communication common carrier or communication service." 18 Pa.C.S.A. § 5702. Many types of tracking information are available,

---

[2] The orders were identical, except for the date of issue.

including historical CSLI and real time CSLI.   Historical CSLI is automatically generated and routinely collected by wireless service providers whenever a cell phone connects to a cell tower. [3]   In contrast, according to the testimony

_____

[3] The Supreme Court of the United States explained historical CSLI technology in its recent decision, *United States v. Carpenter*, 138 S.Ct. 2206, 2211-12 (2018):

> There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people.  Cell phones perform their wide and growing variety of functions by connecting to a set of radio antennas called "cell sites."  Although cell sites are usually mounted on a tower, they can also be found on light posts, flagpoles, church steeples, or the sides of buildings.  Cell sites typically have several directional antennas that divide the covered area into sectors.
>
> Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site.  Most modern devices, such as smartphones, tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's features.  Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI).   The precision of this information depends on the size of the geographic area covered by the cell site.  The greater the concentration of cell sites, the smaller the coverage area.  As data usage from cell phones has increased, wireless carriers have installed more cell sites to handle the traffic.  That has led to increasingly compact coverage areas, especially in urban areas.
>
> Wireless carriers collect and store CSLI for their own business purposes, including finding weak spots in their network and applying "roaming" charges when another carrier routes data through their cell sites.  In addition, wireless carriers often sell aggregated location records to data brokers, without individual identifying information of the sort at issue [in *Carpenter*].  While carriers have long retained CSLI for the start and end of incoming calls, in recent years phone companies have also collected location

by the Commonwealth at Pacheco's trial, real-time CSLI is actively obtained through the following procedure:

> At the request and direction of law enforcement, the wireless service provider sends a command signal to the targeted cell phone. The command signal then reaches the user's cell phone and activates the phone's location subsystem to determine the location of the phone. The phone's location is ascertained by obtaining data from at least three GPS satellites or, in the event GPS data cannot be obtained, the location of the Cell Tower the phone is currently near. The cell phone then transmits its location back to the wireless provider, who in turn e-mails the information to law enforcement. The location information generated is generally accurate within less than thirty meters.

Pacheco's Brief at 9 (citations to record omitted). Here, the orders at issue authorized the collection of Pacheco's real-time CSLI.

Prosecutors and detectives analyzed the information they obtained through the various orders issued under the Wiretap Act. They identified multiple occasions between September 2015 and January 2016 when Pacheco traveled to Georgia and New York. On each trip, Pacheco obtained a car battery containing three kilograms of heroin in Atlanta, Georgia, returned briefly to Norristown, Pennsylvania, and then transported the heroin to the Bronx, New York, using his cell phone to facilitate the transactions.

---

> information from the transmission of text messages and routine data connections. Accordingly, modern cell phones generate increasingly vast amounts of increasingly precise CSLI.

*Carpenter*, 138 S.Ct. at 2211-12.

By monitoring intercepted telephone calls from orders not challenged on appeal, detectives learned that, on January 10, 2016, Pacheco would be driving back from Atlanta, through Norristown, with a retrofitted car battery containing three kilograms of heroin. Police assembled a surveillance team along Pacheco's anticipated route and apprehended him in Montgomery County. A search of his vehicle revealed three kilograms of heroin hidden in the car's battery.[4]

Police arrested Pacheco and charged him with nine counts of PWID and criminal use of a communications facility, two counts of dealing in unlawful proceeds, and one count of conspiracy to commit PWID and corrupt organizations.[5] Among other evidence not challenged on appeal, Pacheco moved to suppress the real-time CSLI evidence. Following a suppression hearing, the trial court denied Pacheco's motion.

The case proceeded to a jury trial beginning on August 7, 2017. Pacheco stipulated that he transported three kilograms of heroin on seven of the nine trips detected by law enforcement. He also admitted on direct examination that he did the things that police said he did. Trial Court Opinion, 3/9/18, at

---

[4] The amount of heroin seized from one car battery was equivalent to approximately one hundred thousand single-dose bags. **See** Trial Court Opinion, 3/9/18, at 4. The total amount of heroin Pacheco transported and possessed, 27 kilograms, was worth $8.9 million on the street. **Id**. at 31.

[5] **See** 35 P.S. § 780-11(a)(30), 18 Pa.C.S.A. §§ 7512, 5111, 903, and 911, respectively.

4 (citation to record omitted). However, Pacheco claimed the defense of duress. He argued that the Mexican drug cartels coerced him to act as a drug courier by threatening to kill his family members if he did not cooperate. Pacheco's Brief at 12.

At the conclusion of trial, the jury convicted Pacheco of all charges, except corrupt organizations. On November 29, 2017, the trial court sentenced him to an aggregate prison term of forty to eighty years, followed by ten years of probation.[6] Pacheco timely filed post-sentence motions, which the trial court denied on December 12, 2017. He then filed a timely notice of appeal. Both Pacheco and the trial court complied with Pa.R.A.P. 1925.

In his Statement of Questions Involved, Pacheco raises the following four issues for our review, which we have reordered for ease of disposition:

I.     Whether [Pacheco] waived [his challenge to the denial of suppression of the real-time CSLI evidence] when it was clearly set forth in his [Rule] 1925(b) statement?

_____

[6] The trial court sentenced Pacheco to serve consecutive prison sentences of five to ten years on seven counts of PWID; concurrent prison sentences of five to ten years on the remaining two counts of PWID; a consecutive prison sentence of three to six years for conspiracy to commit PWID; consecutive prison terms of one to two years for each of the two counts of dealing in proceeds of unlawful activity; five years of probation on two counts of criminal use of a communications facility, consecutive to each other and to the period of incarceration; and five years of concurrent probation for each of the remaining seven counts of criminal use of a communications facility. Trial Court Opinion, 3/9/18, at 5. All of the sentences fall within the standard range of the sentencing guidelines.

- 6 -

II. Whether the trial court erred in denying the motion to suppress evidence where the Commonwealth illegally tracked [Pacheco's] cell phone(s) in violation of the Pennsylvania Constitution, the Fourth Amendment, the Pennsylvania Wiretap Act and the recent decision in *Carpenter v. United States*, 138 S.Ct. 2206, 2218 (2018).[7]

III. Whether the trial court erred by denying the right to present a Mexican drug cartel expert whose testimony would have supported the duress defense presented at trial?

IV. Whether the trial court abused its discretion by imposing a manifestly unreasonable, excessive aggregate sentence of forty (40) to eighty (80) years of imprisonment, which was a virtual life sentence, without giving adequate reasons for that sentence while relying on improper considerations?

Pacheco's Brief at 5 (footnote added).

In considering his first issue, we must decide whether Pacheco sufficiently preserved his challenge to the warrantless collection of the real-time CSLI evidence. Although numerous orders were issued to law enforcement during the course of the investigation, in this appeal, Pacheco challenges only the portions of the orders issued pursuant to 18 Pa.C.S.A. §§ 5771-5775, Subchapter E of the Wiretap Act, which authorized the real-time CSLI tracking of his cell phone.

---

[7] As discussed *infra*, the Supreme Court of the United States in *Carpenter* held that when the government accesses historical CSLI during the course of a criminal investigation, it constitutes a search under the Fourth Amendment, necessitating a warrant.

Appellate Rule 1925 requires that an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues." Pa.R.A.P. 1925(b)(4)(ii). This Court has considered the question of what constitutes a sufficient Rule 1925(b) statement on many occasions. *See, e.g., Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (holding that it is well-established that an appellant must properly specify in his concise statement the error to be addressed on appeal).

In Pacheco's concise statement, he framed his challenge to the real-time CSLI evidence as follows:

> Whether the trial court erred in failing to suppress all evidence derived from the warrantless real-time tracking of [his] cell phone where such evidence was obtained in violation of the Pennsylvania Wiretap Act, Article I, Section 8 of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendment of the United States Constitution?

Concise Statement, 1/31/18, at ¶ 1.

In its Rule 1925(a) opinion, the trial court concluded that Pacheco waived this issue because he stated it too vaguely. Trial Court Opinion, 3/9/18, at 7-8. According to the trial court, because prosecutors obtained multiple court orders authorizing various searches, it was "unclear what evidence was obtained without a [c]ourt order or warrant." *Id*. at 7.

The Commonwealth also argues that Pacheco waived the claim, albeit on a different basis; namely, that Pacheco did not raise a *Carpenter* issue before the trial court. Commonwealth's Brief at 4.

Although Pacheco did not specifically mention the ***Carpenter*** decision until he filed his appellate brief, based on our examination of the certified record, we conclude that Pacheco did, in fact, raise and preserve his challenge to the warrantless collection of real-time CSLI evidence from his cell phone provider. Pacheco filed a supplement to his motion to suppress in which he specifically claimed that prosecutors failed to "seek a search warrant from the [c]ourt to legally utilize 'Mobile Tracking Technology' . . . or similar technology . . . as . . . is required and necessary under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution." Supplement to Motion to Suppress, 11/18/16, at unnumbered 1-2. Pacheco additionally claimed that the use of such technology "constitutes a 'search' under constitutional analysis which . . . cannot be authorized without the issuance of a search warrant based on probable cause." ***Id***. at unnumbered 2.

Following the suppression hearing, Pacheco filed a supplemental brief where he again argued that the orders authorizing real-time CSLI tracking of his cell phone under Subchapter E of the Wiretap Act violated Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution "because the [o]rders fail[ed] to satisfy the constitutional protections of the warrant requirement." Memorandum of Law in Support of Supplemental Motion to Suppress, 3/6/17, at unnumbered 14.

Based on these averments, Pacheco adequately raised and preserved his challenge to the orders authorizing real-time CSLI tracking of his cell phone; he claimed this tracking constituted a search under the Fourth Amendment and that investigators were required to obtain a warrant before the tracking began. We disagree with the trial court's finding that the issue, as Pacheco framed it in his concise statement, was unduly vague. In our view, the issue was stated with sufficient clarity to identify the pertinent issue on appeal; thus, Pacheco did not waive his claim. Pa.R.A.P. 1925(b)(4)(ii).

Having concluded that Pacheco sufficiently preserved his challenge that prosecutors obtained his real-time CSLI without a warrant, we will address the merits of his second issue, *i.e.,* whether the trial court erred in denying his motion to suppress this evidence. Pacheco argues that the seizure of his CSLI information was a search under the Fourth Amendment, and that the orders used by prosecutors were insufficient under **Carpenter** because they were not warrants. Pacheco's Brief at 28, 31. These issues raise pure questions of law, for which our standard of review is *de novo*. **Commonwealth v. Fulton**, 179 A.3d 475, 487 (Pa. 2018). Because these questions challenge the decision of the suppression court, our scope of review as to the subject matter is confined to the factual findings and legal conclusions of the suppression court. **See In re L.J.,** 79 A.3d 1073, 1080 (Pa. 2013). As for the record, we may consider only the evidence of the prevailing party at the suppression

- 10 -

hearing and so much of the evidence of the non-prevailing party as remains uncontradicted, when read in the context of the record as a whole. *Id*.

Pacheco claims the investigators violated his rights under the Fourth Amendment of the Constitution of the United States and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania because they obtained his real-time CSLI without a warrant.

Both the Fourth Amendment of the Constitution of the United States and Article 1 Section 8 of the Constitution of the Commonwealth of Pennsylvania protect citizens from unreasonable, searches and seizures. The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Similarly, the Pennsylvania constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

J-A09011-19

Pa. Const. Art. I, § 8. [8]

In support of his argument that law enforcement violated his rights, Pacheco relies on the Supreme Court of the United States' decision in *Carpenter*, *supra*, which was announced during the pendency of this appeal.[9] There, the High Court addressed the question of whether the government conducts a search under the Fourth Amendment when it accesses *historical* CSLI during the course of a criminal investigation. Suspecting that Carpenter

---

[8] We note that in the argument section of his brief, Pacheco did not set forth a separate analysis of whether the Pennsylvania constitution provided him with greater protection than the federal constitution. To assert a claim that Article I § 8 provides greater protection than its federal counterpart, the Supreme Court of Pennsylvania, in *Commonwealth v. Edmunds*, 586 A.2d. 887, 895 (Pa. 1991), directed that a party must brief and analyze at least the four factors set forth in that decision. Since Pacheco did not undertake this separate analysis in his brief, we will presume he is entitled to the same protection under both the federal and the state constitution, and will consider his claim solely under the Fourth Amendment and its relevant case law.

[9] Although *Carpenter* was decided subsequent to Pacheco's conviction and sentencing, the Supreme Court of the United States has instructed that a new rule for the conduct of criminal prosecution is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)); *see also Commonwealth v. Washington*, 142 A.3d 810, 815 (Pa. 2016) (stating that "new constitutional procedural rules generally pertain to future cases and matters that are pending on direct review at the time of the rule's announcement"). *Carpenter* announced a new rule for the conduct of criminal prosecution; therefore, it applies retroactively to Pacheco's case because it was decided while Pacheco's case was pending on direct review with this Court, and he preserved the issue at all stages of adjudication. *See Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008).

was involved in a string of robberies, federal prosecutors sought and obtained two court orders pursuant to the federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713. These "D orders," issued under 18 U.S.C. § 2703(d),[10] permitted law enforcement to obtain historical CSLI records from Carpenter's wireless service provider for the four-month interval during which the robberies occurred. The records revealed the location of Carpenter's cell phone whenever it made or received calls, and placed the phone near four of the charged robberies.

Prior to trial, Carpenter moved to suppress the historical CSLI provided by the wireless carriers. He argued that the government's seizure of this information violated his reasonable expectation of privacy because it was

---

[10] That section of the federal wiretap act provided:

> **(d) Requirements for court order.**--A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

18 U.S.C.A. § 2703(d).

obtained without a warrant supported by probable cause. The court denied Carpenter's motion. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed, finding that the government conducted no "search." That court reasoned that Carpenter voluntarily shared his cell phone location information with his wireless carriers, and he therefore had no expectation of privacy in his historical CSLI data. *See United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016).

Reversing, the Supreme Court of United States Supreme Court first observed that this type of digital data maintained by a third party did not fit neatly under existing precedents. *Carpenter*, 138 S.Ct. 2206, 2214 (2018). To determine whether historical CSLI was protected by the Fourth Amendment, the court discussed two line of cases, both involving different privacy interests. *Id*. at 2214-15. The first line of cases addressed an individual's expectation of privacy in his physical location and movements. *Compare United States v. Knotts*, 460 U.S. 276 (1983) (finding no expectation of privacy using a beeper to aid in tracking Knotts' car because a person traveling in an automobile on public streets has no expectation of privacy in his movements from one place to another) *with United States v. Jones*, 565 U.S. 400, 405 (2012) (finding a search occurred when agents installed a GPS tracking device on Jones' car and continuously monitored the vehicle's movements for 28 days).

The second line of cases held that a person does not have a reasonable privacy interest in information he voluntarily turns over to third parties, *i.e.,* the third-party doctrine. **See United States v. Miller**, 425 U.S. 435, 443 (1976) (finding no expectation of privacy in financial records held by a bank); **see also Smith v. Maryland**, 442 U.S. 735, 743-744 (1979) (finding no expectation of privacy in records of dialed telephone numbers conveyed to telephone company).

Based on how cell phones are used in today's society, the High Court found that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI, even more so than with a GPS device. As the Court observed, a cell phone has become "almost a feature of human anatomy." **Carpenter**, 138 S.Ct. at 2218. "While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters and other potentially revealing locales." **Id**. In fact, "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." **Id.** Accordingly, the Court held when the government accessed Carpenter's CSLI from his wireless carriers without a warrant, it invaded his reasonable expectation of privacy in the whole of his physical movements. **Id**. at 2219.

The High Court rejected the application of the third-party doctrine to historical CSLI for two reasons: the lack of limitations on this type of information and the fact that an individual does not voluntarily "share" this information in the normal sense of that word. *Id*. at 2219-20. The Court observed:

> In the first place, cell phones and the services they provide are "such a pervasive and insistent part of daily life" that carrying one is indispensable to participation in modern society. Second, a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the part of the user beyond powering up. Virtually any activity on the phone generates CSLI, including incoming calls, texts, or e-mails and countless other data connections that a phone automatically makes when checking for news, weather, or social media updates. Apart from disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data. As a result, in no meaningful sense does the user voluntarily "assume the risk" of turning over a comprehensive dossier of his physical movements.

*Id*. at 2220 (citations omitted; some formatting).

Having found that the acquisition of Carpenter's CSLI was a search, the Court also concluded that the Government must generally obtain a warrant supported by probable cause before acquiring such records. *Id*. at 2221. The Court further determined that the "D orders" issued under 18 U.S.C. § 2703(d) were insufficient, because the government only had to show "reasonable grounds" for believing that the records were relevant and material to an ongoing investigation." *Id*. at 2221. The Court found "that showing falls well short of the probable cause required for a warrant." *Id*.

Notably, the High Court in **Carpenter** emphasized that its decision was a narrow one, and did not extend to matters not before it, including the collection of real-time CSLI, which is the technology at issue in this case. **Id**. at 2220.

Nevertheless, Pacheco asserts that the rationale of **Carpenter** applies with equal or greater force to real-time CSLI tracking. Pacheco's Brief at 26. He argues that a cell phone's historical CSLI automatically generates as it communicates throughout the day with cell towers and the wireless service provider as part of its ordinary operations. By contrast, real-time CSLI tracking requires the wireless service provider to signal the cell phone at the active request of law enforcement. **Id**. at 26-27. Pacheco asserts that "[t]hose signals then reached into [his] pocket, home, car, or wherever the phone was kept, to activate the phone's location subsystem . . . without [his] knowledge." **Id**. at 27.

In the wake of **Carpenter**, other courts addressing this question have determined that real-time CSLI is subject to the same privacy concerns as historical CSLI.[11] Indeed, even before **Carpenter**, several courts determined

---

[11] **See United States v. Thompson**, 2019 U.S. Dist. LEXIS 41169, *33 (D.C. Minn. March 7, 2019) (extending **Carpenter** to real-time CSLI, noting "the Fourth Amendment was undoubtedly implicated and a warrant based on a showing of probable cause was required"); **United States v. Williams**, 2019 U.S. Dist. LEXIS 64324, *31 (S.D. Ga. Feb. 27, 2019) (concluding that the **Carpenter** analysis appears to apply equally to the collection of real-time CSLI); **Sims v. State**, 569 S.W.3d 634, 645 (Tex. Crim. App. 2019) ("Even

that when law enforcement obtained real-time CSLI in the context of a criminal

investigation, it was a search under the Fourth Amendment.[12]

---

though **Carpenter** dealt with historical CSLI, not real-time location information, we believe that the Court's reasoning in **Carpenter** applies to both kinds of records."); **see also United States v. Chavez**, 2019 U.S. Dist. LEXIS 33210, at *41 (N.D. Cal. Mar. 1, 2019) (discussing **Carpenter**'s application to historical CSLI and noting, in *dicta*, that "[e]ventually, the same may be expected of real-time cell-site location information, where an individual has arguably an even greater expectation of privacy"); **State v. Brown**, 202 A.3d 1003, 1014 n.9 (Conn. 2019) (stating, in *dicta*, that "we see no difficulty in extending the rationale of **Carpenter** as applied to historical CSLI to prospective orders").

[12] **See**, **e.g.**, **United States v. Ellis**, 270 F. Supp. 3d 1134, 1145 (N.D. Cal. 2017) (holding "that cell phone users have an expectation of privacy in their cell phone location in real time and that society is prepared to recognize that expectation as reasonable"); **In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.**, 849 F. Supp. 2d 526, 539 (D. Md. 2011) (finding a "reasonable expectation of privacy both in [subject's] location as revealed by real-time [CSLI] and in his movement where his location is subject to continuous tracking over an extended period of time"); **In re Application of U.S. for an Order Authorizing the Release of Historical Cell-Site Info. (In re Application (E.D.N.Y.))**, 809 F. Supp. 2d 113, 119-20 (E.D.N.Y. 2011) (concluding that cell-phone users maintain a reasonable expectation of privacy in long-term CSLI records and that the government's obtaining these records constitutes a Fourth Amendment search); **Tracey v. State**, 152 So. 3d 504, 525-26 (Fla. 2014) (holding that real-time CSLI data was protected by the Fourth Amendment, and thus, its use by law enforcement constituted a search which required a warrant based upon probable cause); **Commonwealth v. Augustine**, 4 N.E.3d 846, 866 (Mass. 2014) (holding that the government-compelled production of the defendant's CSLI records constituted a search in the constitutional sense which required a warrant); **State v. Earls**, 70 A.3d 630, 644 (N.J. 2013) (holding that police must obtain a warrant based on a showing of probable cause, or qualify for an exception to the warrant requirement, to obtain tracking information through the use of a cell phone).

Our research revealed only two Pennsylvania appellate decisions that discussed real-time CSLI. In **Commonwealth v. Rushing**, 71 A.3d 939, 961-64 (Pa. Super.) *rev'd on other grounds*, 99 A.3d 416 (Pa. 2014) the judge who wrote for the majority concluded that the collection of real-time CSLI required probable cause, but no other panel member joined that portion of the judge's decision. The Supreme Court of Pennsylvania granted allocatur and reversed on a separate limited issue. In **Commonwealth v. Cole**, 167 A.3d. 49 (Pa. Super. 2017), this Court decided that a warrant allowing real-time tracking issued in Maryland could extend to tracking in Pennsylvania when the subject voluntarily crossed state lines. The issue of whether real-time CSLI was a "search" was not before the panel.

We find no meaningful distinction between the privacy issues related to historical and real-time CSLI. In our view, the High Court's rationale in **Carpenter** extends to real-time CSLI tracking. Applying that Court's analogy, obtaining real-time CSLI is the equivalent of attaching an ankle monitor to the cell phone's user; it allows the government to track the user's every move as it is happening. **See Carpenter**, 138 S.Ct. at 2218. Therefore, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through real-time CSLI. As such, when prosecutors sought and obtained real-time information about Pacheco's location by pinging his cell phone, they conducted a "search" under the federal and state constitutions.

Because a search occurred, we must decide whether the orders prosecutors used to seize that information under the Pennsylvania Wiretap Act satisfied the warrant requirement of the Fourth Amendment. Pacheco argues that mere orders are insufficient under **Carpenter**, and that the government specifically needs a warrant. "[B]ecause detectives had no warrant to obtain [Pacheco's] real-time CSLI, all evidence derived therefrom must be suppressed pursuant to **Carpenter**." Pacheco's Brief at 28. "Moreover, unlike in **Jones** where the Court did not address the warrant requirement, the holding in **Carpenter** unequivocally requires a warrant to obtain CSLI." **Id**. at 31. [13]

Our research discloses that the Supreme Court of the United States previously has held that "orders" issued under the federal wiretap act were, in fact, warrants under the Fourth Amendment, provided certain requirements were met. **Dalia v. United States**, 441 U.S. 238, 255-256 (1979). In **Dalia**,

_____

[13] In his brief, Pacheco discusses two additional arguments regarding these orders, namely that, as written, they provide "target-specific" surveillance which can only be issued by the Superior Court under Subchapter B of the Wiretap Act, and that they were overly broad. Pacheco's Brief at 18-20; 32-41. However, Pacheco did not raise these specific issues in his concise statement. Thus, they are waived. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived). **See also** Pa.R.A.P. 1925(b)(4)(ii), which requires an appellant filing a concise statement to identify each error the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge.

the government obtained orders under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. §§ 2510–2520, which permitted courts to authorize electronic surveillance by government officers in specified situations. *Id*. at 240. The district court found probable cause to believe that the defendant was a member of a conspiracy stealing goods in interstate commerce. *Id*. at 241. It granted the government's request for authorization to intercept all oral communications concerning the conspiracy at the defendant's office. *Id*. at 242. The defendant was convicted. On appeal, the defendant challenged, among other things, the government's covert entry to his office, claiming it violated his Fourth Amendment privacy rights. *Id*. at 254-55.[14] The Third Circuit affirmed. The Supreme Court of the United States, in affirming his conviction, observed that three things were required to meet the warrant requirement under the Fourth Amendment:

> The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Finding these words to be "precise and clear," this Court has interpreted them to require only three things. First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. Finally, "warrants must

---

[14] The defendant claimed the warrant was invalid because he did not have notice that it was being executed. *Dalia*, 441 U.S. at 247. Pacheco does not argue lack of notice regarding law enforcement's interception of his real-time CSLI. In any event, under the Fourth Amendment, such argument would fail. *Id*. at 248-59.

particularly describe the 'things to be seized,'" as well as the place to be searched.

*Id*. at 255 (citations omitted).

It concluded that **the court order** authorizing the interception of oral communications at the defendant's office **was "*a warrant issued in full compliance with these traditional Fourth Amendment requirements*.**"

*Id*. at 255 (emphasis added). As the Court observed:

> [The order] was based upon a neutral magistrate's independent finding of probable cause to believe that [defendant] had been and was committing specifically enumerated federal crimes, that petitioner's office was being used "in connection with the commission of [these] offenses," and that bugging the office would result in the interception of "oral communications concerning these offenses." Moreover, the exact location and dimensions of [defendant's] office were set forth, and the extent of the search was restricted to the "[i]ntercept[ion of] oral communications of [defendant] and others as yet unknown, concerning the above-described offenses at the business office of [defendant]. . . ."

*Id*. at 256 (citations to record omitted; some brackets in original). Thus, the High Court found that some orders may, in fact, be warrants.

Turning to the case before us, the court orders in question were obtained by Montgomery County District Attorney's Office pursuant to Subchapter E of the Wiretap Act.[15] 18 Pa.C.S.A. §§ 5771-5775. We find that

---

[15] Subchapter E of Wiretap Act allows a district attorney to apply to a court of common pleas or the Superior Court, depending on the circumstances, for an order authorizing the collection of mobile communications tracking information. 18 Pa.C.S.A. § 5772(a). Orders issued under this subchapter, must contain the following specific information:

these "orders" met the requirements identified in **Dalia.** First, the orders were issued by a judge of the Court of Common Pleas of Montgomery County, a neutral, disinterested, judicial officer authorized to issue such orders under the Pennsylvania Wiretap Act. 18 Pa.C.S.A. §§ 5772 (a), 5773. Second, the orders specifically state that the court found "probable cause" that the information sought would aid in the apprehension of a particular individual for a particular offense. Orders, 8/28/19 and 10/15/19, at ¶¶ 1-4. They identify the individual, "David Pacheco . . . a source for heroin." *Id*. at ¶ 3. And, they identify the criminal offenses "including but not limited to the Manufacture,

---

(i) That there is probable cause to believe that information relevant to an ongoing criminal investigation will be obtained from the targeted telephone.

(ii) The identity, if known, of the person to whom is leased or in whose name is listed the targeted telephone, or, in the case of the use of a telecommunication identification interception device, the identity, if known, of the person or persons using the targeted telephone.

(iii) The identity, if known, of the person who is the subject of the criminal investigation.

(iv) In the use of pen registers and trap and trace devices only, the physical location of the targeted telephone.

(v) A statement of the offense to which the information likely to be obtained by the pen register, trap and trace device or the telecommunication identification interception device relates.

18 Pa.C.S.A. § 5773(b).

Delivery and or Possession with Intent to Deliver a Controlled Substance; Criminal Conspiracy; and Criminal Use of a Communication Facility."[16] *Id*. at ¶ 4. Third, the orders described the place to be searched (Pacheco's cell phone) and the items to be seized (the real-time CSLI for that phone). *Id*. at ¶¶ 1, 9. Because the orders met the three requirements of *Dalia*, they were in fact warrants under the Fourth Amendment. [17] Therefore, the search in this case was legal.

Furthermore, the instant orders were obtained pursuant to affidavits of probable cause, each more than thirty pages long, detailing the specifics of the criminal investigation into this Mexican drug cartel's activities in the United States, and Pacheco's suspected role in that operation. The affidavits attested to the personal observation of the affiant, information provided by other investigators and law enforcement agencies, several confidential and reliable informants, and information from other electronic and physical surveillance.

---

[16] 35 Pa.C.S.A. § 780-113; 18 Pa.C.S.A. §§ 903, 5111, 7512.

[17] We note that this Court previously ruled that orders issued under the Pennsylvania Wiretap Act may serve as "**the functional equivalent of traditional search warrants**," provided the orders were issued by the court upon a showing of the requisite level of suspicion. **See Commonwealth v. Burgos**, 64 A.3d at 655 (emphasis added). We clarify that ruling today by holding, pursuant to **Dalia**, that orders duly issued by the court under the Pennsylvania Wiretap Act, supported by probable cause, and particularly describing the place to be searched and the items to be seized, are "warrants" under the Fourth Amendment. The nomenclature of the statute is irrelevant.

Finally, and most importantly, these orders, when read in their totality,[18] indicate that the court found **probable cause** that the information obtained would lead to evidence that Pacheco was violating specific provisions of the crimes code and would enable law enforcement to track and locate him through his cell phone.

The warrants issued here under the Pennsylvania Wiretap Act differ substantially from the "D orders" issued under the federal SCA in **Carpenter**. The court that issued the "D orders" compelling Carpenter's records merely found there were "**reasonable grounds**" to believe that the records sought were relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Unlike the Pennsylvania Wiretap Act, the federal statute did not require, and the government did not provide, an affidavit of probable cause individualized to Carpenter and his suspected crimes for the issuance of the "D orders". **Compare** 18 Pa.C.S.A. § 5772, **with** 18 U.S.C. §2703(d). Again, in the High Court's opinion, the showing of reasonable grounds fell "well short of the probable cause required for a warrant," noting that "[t]he Court usually

---

[18] In **Illinois v. Gates**, 462 U.S. 213 (1983), the Supreme Court of the United States adopted a "totality of the circumstances" standard under the federal constitution in analyzing probable cause for search warrants based on information from confidential informants. Gates, 462 U.S. at 238. **See also Commonwealth v. Gary**, 503 A.3d. 921 (Pa. 1985). Additionally, **Gates** held that the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding that probable cause existed." **Gates**, 462 U.S. at 238-39. We note that Pacheco did not specifically preserve an issue challenging the finding of probable cause.

requires some quantum of individualized suspicion before a search or seizure may take place." ***Carpenter***, 138 S.Ct. at 2221 (citation and internal quotation marks omitted).

In sum, we find the government conducted a search when it obtained Pacheco's real-time CSLI and that search was constitutional, because it was conducted pursuant to warrants properly issued in accordance with the Pennsylvania Wiretap Act and the Fourth Amendment. Accordingly, Pacheco's second issue has no merit.

In his third issue, Pacheco argues that the trial court erred in limiting the scope of testimony provided by defense witness Robert O. Kirkland, Ph.D., who was qualified as an expert on Mexican drug cartels. Our review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. ***See Commonwealth v. Dengler***, 890 A.2d 372, 379 (Pa. 2005).

In order to preserve a challenge to an evidentiary ruling, a litigant must make a timely and specific objection to the court's ruling. ***See Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008) (holding that issues are preserved when objections are made timely to the error or offense); ***Commonwealth v. May***, 887 A.2d 750, 761 (Pa. 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claims waived); ***Commonwealth v. Bruce***, 916 A.2d 657, 671 (Pa. Super. 2007) (holding that a "failure to offer a timely and specific objection results in

waiver of" the claim).  Additionally, "if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance is apparent from the context."  Pa.R.E. 103(a)(2).

At trial, Dr. Kirkland testified generally about Mexican drug cartels.  He explained that the cartels normally operate in the United States through cross-border family connections or individuals with dual citizenship.  He further testified as to the coercive tactics used by the most powerful Mexican drug cartels, including killing, extortion, and threats of violence both in Mexico and in the Unites States against individuals and their family members.  N.T. Trial, 8/9/17, at 217-18.  The evidentiary rulings at issue arose when defense counsel attempted to ask Dr. Kirkland certain hypothetical questions:

> [Defense counsel]: So, if there was an individual who lived in the United States who had a family member who was living in Mexico, that person would be at risk of kidnapping if the cartel wanted such, correct?
>
> [Prosecutor]: Objection.
>
> The Court: Sustained.  Don't answer that Doctor.
>
> Q: Sir, I want you to assume the following facts in terms of this hypothetical question: Assume that specifically an individual lived in Norristown and –
>
> [Prosecutor]: I'm going to object right now, Your Honor.

*Id*. at 221.  In sustaining the Commonwealth's objections, the trial court ruled that, based on the area of expertise for which Dr. Kirkland was qualified, he could testify generally about the cartels, but could not testify specifically to Pacheco's case.  ***See id***. at 222; ***see also*** Trial Court Opinion, 3/9/18, at 17.

The following day, after Dr. Kirkland's testimony was completed, defense counsel placed a formal objection on the record regarding the court's limitation of Dr. Kirkland's testimony, and its refusal to let him respond to hypothetical questions specific to Pacheco's case. N.T. Trial, 8/10/17, at 16-17. Defense counsel indicated that he had intended to elicit Dr. Kirkland's opinion as to whether Pacheco would have been a potential target of extortion by the cartel. *Id*. at 17. The trial court ruled that because Dr. Kirkland never interviewed Pacheco, and had no direct contact with him, it would be a "great leap" for him to render an opinion as to whether Pacheco was, in fact, threatened by the cartels. *Id*. at 18.

Pacheco asserts that the hypothetical questions his counsel intended to ask were framed to demonstrate that an individual residing in the United States, who has family members living in Mexico, is at risk of having his relatives kidnapped should he refuse to cooperate with cartel associates. Pacheco argues that his sole defense was duress, and the trial court prevented Dr. Kirkland from opining as to whether Pacheco was threatened by the cartels so as to establish this defense.[19]

The trial court ruled that Pacheco waived his evidentiary claim, since he failed to make a timely objection or offer of proof regarding the hypothetical

---

[19] Notably, prior to questioning Dr. Kirkland, defense counsel specifically stated "I'm not going to ask [Dr. Kirkland] to give an opinion as to whether this particular defendant was under duress because that's up to the jury to decide." N.T. Trial, 8/9/17, at 193.

questions he intended to ask Dr. Kirkland. Trial Court Opinion, 3/9/18, at 18. The trial court noted that defense counsel made no objection or offer of proof when the trial court made its evidentiary rulings, but waited to do so until the following day of trial. *Id*.

We agree with the trial court's waiver determination. Counsel waited until the day after Dr. Kirkland had been excused from the witness stand to object to the limitation of his testimony. Under our jurisprudence, this was simply too late to lodge an objection to the ruling that limited the scope of the witness's direct examination. *See Commonwealth v. Tucker*, 143 A.3d 955, 962 (Pa. Super. 2016) (holding that claim was waived where appellant waited until the completion of direct examination and cross-examination of the subject witness and the next witness before raising objection). By failing to place this argument on the record contemporaneously with the trial court's ruling, Pacheco has waived it. *See Commonwealth v. McGriff*, 160 A.3d 863, 868 (Pa. Super. 2017) (finding issue waived for failure to make a timely and specific objection at time of witness's testimony).[20]

In his final issue, Pacheco challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d

---

[20] Even if the claim had not been waived, we would have concluded that it lacks merit for the reasons expressed by the trial court in its opinion. *See* Trial Court Opinion, 3/9/18, at 18-19.

162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[A.] § 9781(b).

*Id*. (citation omitted). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). Further, "[a] substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id*. (internal citations omitted).

In the instant case, Pacheco filed a timely notice of appeal, preserved his claims in a timely post-sentence motion, and included in his appellate brief a Rule 2119(f) statement. As such, he technically complied with the first three requirements to challenge the discretionary aspects of his sentence. *See*

*Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to review his Rule 2119(f) statement to determine whether Pacheco has presented a substantial question for our review.

In his Rule 2119(f) statement, Pacheco claims that the trial court improperly relied on a heroin study provided by the Commonwealth which indicated sentences imposed on defendants in different jurisdictions where little information is known. Pacheco also claims that, rather than focusing on Pacheco's rehabilitative needs in fashioning his sentence, the trial court sought to send a message that severely harsh sentences will be imposed for drug mules. Pacheco contends that the trial court improperly considered as an aggravating factor the potential harm that Pacheco could have caused had he not been caught by law enforcement, rather than the actual harm he caused by his drug trafficking activities. Pacheco asserts that, in failing to consider his rehabilitative needs and in holding him accountable for a severe heroin epidemic, the trial court's consecutive sentencing scheme, even though within the standard range of the guidelines, renders his sentence manifestly excessive, and a virtual life sentence.

This Court has held on numerous occasions that a claim of inadequate consideration of rehabilitative needs does not raise a substantial question for our review. *See Commonwealth v. Haynes*, 125 A.3d 800, 807 (Pa. Super. 2015). Similarly, an allegation that a sentencing court failed to consider or did not adequately consider certain mitigating factors does not raise a

substantial question that the sentence was inappropriate. ***See Commonwealth v. Lewis***, 911 A.2d 558, 567 (Pa. Super. 2006).

However, an allegation that the court considered an impermissible sentencing factor raises a substantial question. ***See Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super. 2009); ***see also Commonwealth v. Matroni***, 923 A.2d 444 (Pa. Super. 2007). With regard to the imposition of consecutive sentences, this Court has stated:

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.
>
> [An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Commonwealth v. Swope***, 123 A.3d 333, 338-39 (Pa. Super. 2015) (citations and quotations omitted).

Because Pacheco claims that the court considered an impermissible sentencing factor and that his standard range consecutive sentences are unreasonable as applied to him, we find he raises a substantial question and will address the merits of his discretionary sentencing claim.

The trial court determined that Pacheco's excessiveness claim, if reviewable,[21] lacks merit because the trial court did not abuse its discretion in fashioning his sentence. The court explained its determination, as follows:

[Pacheco] is incorrect to claim that his sentence is unduly harsh in light of the conduct at issue. This court presided over the jury trial in this case and heard all the evidence. This court noted the Defendant's age, his family, and his prior job and company. It also noted that it did not believe [Pacheco] started his criminal activity with the intent of joining a cartel. This case involved a large amount of money and [Pacheco's] own words that he hoped there would be more, more work, more money. This court noted the huge amount of money that the heroin was worth, specifically, the 27 kilograms of heroin that [Pacheco] transported and possessed was worth 8.9 million dollars on the street.

While the opiate issue within Montgomery County was mentioned and this court considered that there is an effect from opiate addiction on the people of this community, this court did not provide that consideration undue weight. It was merely one of many factors considered. This court also possessed a pre-sentence investigation [("PSI")], heard the [allocution] of [Pacheco], and the testimony from [Pacheco's] wife and half-brother. This court did not improperly rely on the severity of the heroin epidemic in fashioning its sentence. Rather, this court noted that the conduct of [Pacheco] contributed to the drug problem within the community, and that his trafficking of massive amounts of heroin contributed to that problem. It is proper for this court to consider the effect of [Pacheco's] criminal actions on the community.

However, this court also considered the individual characteristics of [Pacheco] as laid out in the PSI, arguments of counsel, and statements of [Pacheco] and his family. Finally, this court did note that the jury acquitted [Pacheco] of corrupt organizations and heard evidence that the police did not recover large sums of money from [Pacheco]. Nevertheless, the lack of evidence that

_____

[21] We note that the trial court believed Pacheco failed to raise a substantial question, but provided an analysis in the event we determined he has. *See* Trial Court Opinion, 3/9/18, at 29.

[Pacheco] was in possession of large amounts of money is not relevant to the sentence. What is relevant to the sentence, among the other factors already discussed, is the conduct of [Pacheco] in this case.

In particular, [Pacheco] trafficked 3 kilograms of heroin 9 different times. He made long trips to Georgia and New York in his trafficking. Each trip, which resulted in the trafficking of 3 kilograms of heroin, deserved a separate sentence. Still, rather than imposing all 9 possession with intent to distribute counts consecutively, this court imposed a mixture of consecutive and concurrent sentences in order to effectuate a particular sentencing scheme that reflected the seriousness of the criminal conduct. [Pacheco] should not receive a volume discount for his crimes because he committed the same crime more than once. Considering the quantity of drugs in this case, it was reasonable to run sentences for seven of the nine separate acts consecutively. Additionally, the two trips in which [Pacheco] transported large sums of drug money were equally deserving of their own consecutive sentences. Dealing in proceeds of criminal activity is a separate action to the drug trafficking behavior of [Pacheco]. Finally, the conspiracy charge was also deserving of its own sentence. [Pacheco] did not just traffick [sic] 27 kilograms of heroin, he engaged in a far reaching conspiracy to achieve his criminal goals. Therefore, that action was also deserving of separate punishment. This court did not run every sentence consecutive, nor did this court even impose a prison term for each count. Additionally, all sentences were guideline range sentences. Considering the criminal conduct at issue, this sentence was appropriate.

Trial Court Opinion, 3/9/18, at 30-32 (citations to record and some capitalization omitted).

We discern no abuse of discretion by the trial court in imposing Pacheco's sentence. Importantly, the sentencing court had the benefit of a PSI. It is well-settled that where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion

- 34 -

should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)). Moreover, in light of the criminal conduct at issue, we cannot conclude that the trial court's imposition of standard range sentences is clearly unreasonable, or that Pacheco's aggregate sentence is unduly harsh. ***Swope***, 123 A.3d at 338-39. Accordingly, Pacheco's final issue entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/20