J-S21006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAJUAN BOND | : | |
| | : | |
| Appellant | : | No. 1913 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007220-2021

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED SEPTEMBER 25, 2024**

Jajuan Bond appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after the trial court found him guilty of one count each of persons not to possess firearms,[1] firearms not to be carried without a license,[2] carrying firearms in public in Philadelphia,[3] and tampering with physical evidence.[4] Upon careful review, we affirm.

The trial court set forth the factual history as follows:

On May 14, 2021, [] Rachel [Duffy] spent the day with [Bond] drinking, smoking marijuana[,] and using Xanax. The two friends [had known] each other for many years, and had[,] in fact, spent the days leading up to May 14, 2021[,] together. The two arrived

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] *Id.* at § 6106(a)(1).

[3] *Id.* at § 6108.

[4] *Id.* at § 4910(1).

at 5952 Opal Street with two other people, [Bond's] cousin[] and his cousin's girlfriend. [Duffy] observed [Bond] with a firearm in his waistband. Over the course of the day, she saw him remove the gun and hold it in his hand. At some point [in the evening], the gun went off, striking her in the head, causing her to fracture her jaw. Bullet fragments remain in her jaw. As a result of the shooting, [Duffy] suffered [a] brain injury requiring her to [re-]learn how to walk, eat[,] and talk. Eventually, she recovered, but still suffers from pain in her jaw when she eats. She also has a scar.

At trial, [Duffy] had no memory whatsoever of who actually shot her. She remembered hearing a loud "boom" and then the next thing she remembers is waking up in Albert Einstein Medical Center.

The Commonwealth presented video evidence showing [Bond] with the gun outside the house on Opal Street both before and after the shooting. After the shooting, [Bond] can be seen on video leaving the house with the firearm in his hand, while also on the phone with 911 trying to get help for [Duffy]. [Bond] can be seen walking across the street to an empty lot before returning to the house to await [the] arrival of emergency personnel and the police.

Police later recover[ed] a .32 caliber revolver handgun from the empty lot across the street. [Bond] admitted [] to the 911 operator [that he had tossed the gun]. He did not have a valid license to carry a firearm and was not eligible to obtain a license due to a disqualifying [conviction] under the [Uniform] Firearms Act, [18 Pa.C.S.A. §] 6105.

Police conducted DNA testing of the firearm and no DNA could be obtained from the gun. Police also collected gunshot residue from [Bond's] pants.

Trial Court Opinion, 10/23/23, at 2-3 (citations to the record omitted).

On December 21, 2022, following a non-jury trial, the Honorable Diana L. Anhalt found Bond guilty of the above offenses.[5] On March 10, 2023, Judge Anhalt sentenced Bond to an aggregate term of five to ten years'

_____

[5] Bond was found not guilty of aggravated assault.

incarceration, followed by five years' probation.[6] At sentencing, the court had the benefit of a presentence investigation report (PSI), mental health report, prior record check, mitigation report, and sentencing memorandum. Bond also directly addressed the court and accepted "full responsibility" for bringing a firearm into the house on May 14, 2021. *See* N.T. Sentencing, 3/10/23, at 37-38.

Following sentencing, Bond filed a timely motion for reconsideration, arguing that the court failed to follow the general sentencing principles set forth in 42 Pa.C.S.A. § 9721(a), specifically that the court failed to consider Bond's rehabilitative needs and his remorse for his actions, and improperly considered the impact on Duffy. *See* Motion, 3/14/23, at 7-8. Bond's motion was denied by operation of law. *See* Order, 7/12/23; *see also* Pa.R.Crim.P. 720(B)(3).

Bond filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Bond raises a single issue for our review:

> Did the [trial] court err and abuse its discretion by imposing an unreasonable sentence without proper consideration of mitigating factors, such as [Bond's] background and rehabilitative needs?

---

[6] The court imposed concurrent sentences of five to ten years' incarceration for the persons not to possess firearms conviction and one to two years' incarceration for the tampering with physical evidence conviction. The court also imposed concurrent sentences of five years' probation for both the firearms not to be carried without a license and carrying firearms in public in Philadelphia convictions, to be served consecutively to his term of incarceration.

- 3 -

Appellant's Brief, at 3.

Bond challenges the discretionary aspects of his sentence, which is not appealable as of right, but is considered a petition for permission to appeal. ***Commonwealth v. Williams***, 562 A.2d 1385, 1386-87 (Pa. Super. 1989) (en banc). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015). The existence of a substantial question must be determined on a case-by-case basis. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa. Super. 1995).

Here, Bond filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included the requisite Rule 2119(f) statement in his brief, and, thus, has met the first three requirements for review. ***See*** Appellant's Brief, at 8-10. Therefore, we must determine whether Bond has raised a substantial question.

Bond contends that the trial court "did not comport with the required sentencing considerations outlined in [sections] 9781(d) and 9721(b)[,]" by failing to sufficiently consider his rehabilitative needs, "which led to the

imposition of a sentence that was manifestly excessive and unreasonable[.]" *Id.* at 8-9.

This Court has held that a claim that a trial court failed to consider relevant sentencing criteria, including the rehabilitative needs of the appellant and protection of the public, presents a substantial question for our review. *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016); *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (same); *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (excessive sentence claim in conjunction with assertion that court failed to consider mitigating factors raises substantial question). Accordingly, we will consider the merits of Bond's claim.

Our standard of review of the discretionary aspects of a sentence is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Further, an appellate court may not reweigh the factors considered by the trial court when imposing sentence. *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009). Finally, where the sentencing court has the benefit of reviewing a PSI, we presume that the court was "aware of [the] relevant

information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988); **see also Commonwealth v. Hallock**, 603 A.2d 612, 616 (Pa. Super. 1992) (same); **Commonwealth v. Pacheco**, 227 A.3d 358, 377 (Pa. Super. 2020) (where court informed by PSI, court presumed aware of all sentencing factors and considerations).

Pursuant to the Sentencing Code, an appellate court must vacate a sentence if the trial court erroneously applied the Sentencing Guidelines, if the circumstances of the case would cause the application of the guidelines to be clearly unreasonable, or if the court sentenced outside the guidelines in an unreasonable manner. **See** 42 Pa.C.S.A. § 9781(c). In reviewing the record on appeal from a discretionary aspects of sentencing claim, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

**Id.** at § 9781(d).

Bond argues that while he was sentenced within the standard-range of the Sentencing Guidelines, the court's application of the guidelines was clearly unreasonable in his case. **See** Appellant's Brief, at 9-10; **see also** 42 Pa.C.S.A. § 9781(c)(2). More specifically, Bond posits that the court placed disproportionate weight on his prior "unsuccessful" experiences with social

services, without giving enough weight to his untreated trauma, drug and alcohol addiction, recent mental health diagnoses, or his cooperation with police and expression of remorse in the instant case. *See* Appellant's Brief, at 11, 18-19.

Bond points to the "extensive mitigating evidence" presented to the court, including a six-page mitigation report detailing his difficult childhood, drug and alcohol abuse beginning at age 12, "several stints of homelessness" beginning at age 15, challenges in school due to severe ADHD, and other traumas he experienced at a young age. *See* Appellant's Brief, at 15-16. The report also included his employment history, and notes that he was selling drugs at age 16, but eventually obtained gainful, legal employment after he was arrested at age 19, and then lost his employment due to COVID. *Id.* at 17. Bond also argues that the circumstances of the incident support a mitigated sentence as he called 911 several times after the bullet hit Duffy, immediately provided police with his identifying information, stated that he was on probation, and expressed remorse for bringing the gun to the house that night. *Id.* at 17-18. Bond concludes that despite the mitigating evidence presented, the court "relied disproportionately" on other sentencing factors, thereby rendering his sentence unreasonable. *Id.* at 18 (citing *Commonwealth v. Wilson*, 946 A.2d 767, 770 (Pa. Super. 2008)). We disagree.

Judge Anhalt provided the following explanation for Bond's sentence:

It is not an ag[gravated] assault case at all. And that's the point that I'm trying to make, is that this isn't a standard gun case, either, where you're standing on the corner, have a gun and the cops just happen to come up and find you with a gun.

This is a situation where—but for the fact that that gun that you had goes off in that girl's face, in her head and then you leave, tried to hide it. And I know you tried to get her help. You tried to do all those things—and I remember the video. I'll never forget get it. I remember that.

So that's what makes this different for you, in my opinion. I am interested in hearing your mitigation information, but I'm also confused at how and why—you were on your third gun here. Your third gun that you've been involved in. That's a lot of guns for a young guy. And that's an important consideration for me to take into account when I fashion a sentence that has to address the issue of protecting the community, because I do think that your history indicates that you're dangerous.

You've been given opportunities to get treatment, and you've been given opportunities to get help all along the way. Now, granted, not the same way, perhaps, I wish you had[,] because we wouldn't be in this situation, but you've been on probation in the past. You've been in therapy in the past. You've had a lot of services—some services, anyway, that have been given to you. And unfortunately—now, I'm sure that your mitigation was used to try to get you a three—I mean, why in the world—there's [] three years of probation in an aggravated assault case where someone was shot [at], I have no idea.

\* \* \*

I have considered [the COVID situation in the prisons[7]], but look, if the only way that you can protect yourself is to arm yourself with either a firearm or homemade weapon, we have problems in this society. And if that's your choice, I got you. **I'm going to protect society from you because you are the problem**, not

---

[7] At sentencing, defense counsel asked the court to consider the "circumstances and the environment" at the detention center where Bond had been held since the incident.

everybody else. You're the problem. **So[,] I've considered that. And I balanced your mitigation with that**.

So[,] my sentence is in the guidelines, **having considered everything**. I think this is an outside[-]the[-]guidelines case to aggravate, but instead of aggravating, I'm going to put it back towards the middle.

So[,] it's the sentence of the [c]ourt that you serve five to ten years on [section] 6105, followed by five years of probation on [section] 6108; on tampering with evidence, it's one to two [years' incarceration] concurrent; and on [section] 6106, it's also five years [of] probation concurrent with the other probation but consecutive to the incarceration.

So[,] your total sentence is five to ten [years of incarceration followed by] five years of probation and credit for time served.

I would suggest that he be in a therapeutic community for the prison, so you finally put this stuff to rest, because I feel like it's done now. You cannot continually use this history to try to mitigate your future.

N.T. Sentencing, 3/10/23, at 39-42 (emphasis added).

Here, the court did more than simply acknowledge the mitigating evidence, but rather demonstrated and applied her understanding of Bond's past in determining his sentence, including his prior convictions involving guns. The court indicated that an aggravated-range sentence would be appropriate under the facts of the case, which was the request of the Commonwealth. *See* N.T. Sentencing, 3/10/23, at 41 (Court stating "this is an outside the guidelines case"); *see also id.* at 35 (Commonwealth "asking for a slightly aggravated sentence . . . of six to twelve years."). However, "having considered everything" and balancing the facts of the case with Bond's mitigating evidence, the court ultimately imposed a sentence within the standard-range of the guidelines. *Id.* at 41. The court's reasoning, in

- 9 -

conjunction with its review of the PSI, is sufficient to demonstrate that the court did in fact consider the factors promulgated in section 9781(d) of the Sentencing Code when imposing Bond's sentence.  **See Devers**, **supra**; **Pacheco**, **supra**.  Moreover, we will not reweigh the factors considered by the sentencing judge.  **See Macias**, **supra**.  Accordingly, Bond's claim that the trial court failed to consider relevant sentencing criteria, including Bond's rehabilitative needs and the protection of the public, lacks merit.  We discern no abuse of discretion by the trial court.  **See Shugars**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  9/25/2024