**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY LEWIS, JR. | : | |
| | : | |
| Appellant | : | No. 1673 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001520-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY LEWIS, JR. | : | |
| | : | |
| Appellant | : | No. 1674 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001795-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY LEWIS, JR. | : | |
| | : | |
| Appellant | : | No. 1675 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003172-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|                                              |   |                                         |
|----------------------------------------------|---|-----------------------------------------|
|                                              | : |                                         |
| v.                                           | : |                                         |
|                                              | : |                                         |
|                                              | : |                                         |
| GREGORY LEWIS, JR.                           | : |                                         |
|                                              | : |                                         |
| Appellant                                    | : | No. 1676 EDA 2021                       |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003777-2017

|                                              |   |                                         |
|----------------------------------------------|---|-----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA                 | : | IN THE SUPERIOR COURT OF                |
|                                              | : | PENNSYLVANIA                            |
|                                              | : |                                         |
| v.                                           | : |                                         |
|                                              | : |                                         |
|                                              | : |                                         |
| GREGORY LEWIS, JR.                           | : |                                         |
|                                              | : |                                         |
| Appellant                                    | : | No. 1677 EDA 2021                       |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001059-2018

|                                              |   |                                         |
|----------------------------------------------|---|-----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA                 | : | IN THE SUPERIOR COURT OF                |
|                                              | : | PENNSYLVANIA                            |
|                                              | : |                                         |
| v.                                           | : |                                         |
|                                              | : |                                         |
|                                              | : |                                         |
| GREGORY LEWIS, JR.                           | : |                                         |
|                                              | : |                                         |
| Appellant                                    | : | No. 1678 EDA 2021                       |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001528-2018

|                                              |   |                                         |
|----------------------------------------------|---|-----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA                 | : | IN THE SUPERIOR COURT OF                |
|                                              | : | PENNSYLVANIA                            |
|                                              | : |                                         |
| v.                                           | : |                                         |
|                                              | : |                                         |
|                                              | : |                                         |

GREGORY LEWIS, JR.               :
                                          :
           Appellant               :      No. 1679 EDA 2021

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001529-2018

BEFORE: NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:              **FILED AUGUST 29, 2022**

Appellant Gregory Lewis, Jr. appeals from the judgment of sentence imposed following his consolidated jury trial and convictions for second-degree murder, kidnapping, robbery, and related offenses. Appellant challenges the trial court's denial of his motions to suppress, evidentiary rulings, consolidation of separate informations for trial, denial of his request for a mistrial, the sufficiency of the evidence, and the denial of his motion for a new trial based on after-discovered evidence. We affirm.

### Background

We adopt the trial court's summary of the facts underlying this matter. *See* Trial Ct. Op., 10/23/19, at 2-3. Briefly, Appellant was charged with multiple offenses in seven cases after he committed a series of commercial robberies in Northampton County. The robberies also involved two kidnapping attempts, one of which resulted in the death of the victim. Prior to trial, the Commonwealth filed a motion to consolidate all seven cases, which the trial court granted.

Appellant filed an omnibus pre-trial motion seeking to suppress, among other things, 1) cell phone records, including location data; 2) data extracted

- 3 -

from the cell phones that the police seized from Appellant; and 3) evidence recovered from a search of Appellant's residence. Appellant's Omnibus Pre-trial Mot., 10/16/18, at 4-8. During the suppression hearing, the Commonwealth submitted into evidence orders for cell phone records for phones with numbers ending in 5435 and 3074. N.T. Suppression Hr'g, 11/15/18, at 7-8; Commonwealth's Ex. 5 and 6. The Commonwealth also presented search warrants to obtain cell phone records for phones with numbers ending in 3074 and 4895, to extract data from two cell phones found in Appellant's car, and to search Appellant's residence. N.T. Suppression Hr'g, 11/15/18, at 8-11, 21; Commonwealth's Ex. 7, 8, 9, 10, and 11. The trial court denied Appellant's motions to suppress on December 7, 2018.

Appellant also filed several pre-trial motions *in limine* seeking to exclude certain evidence. Relevant to this appeal, Appellant sought to exclude (1) cell phone records; (2) alleged death threats that Appellant made against three individuals involved in these cases; (3) the name of the assistant district attorney who Appellant had threatened to kill; and (4) Appellant's nickname. The trial court denied all of Appellant's relevant motions *in limine*.

Appellant's consolidated jury trial began on April 15, 2019. At trial, Detective Charles Leauber testified that during his investigation into one of the robberies at issue, he reviewed the store's security camera footage. N.T. Trial, 4/22/19, at 102. Detective Leauber identified Appellant as one of the two individuals in the security video. *Id.* at 105. After Appellant objected to the detective's identification, the trial court issued the following instruction:

- 4 -

Ladies and gentlemen, you are to disregard the identification by this witness of [Appellant]. There has been no evidence of that identification. And you are instructed, [Detective], to use some other descriptive term for whichever of the two individuals it is that you are referring to in your testimony without referring to that individual by name.

*Id.* at 105-106. Appellant requested a mistrial, arguing that the curative instruction was inadequate. *Id.* at 106-07. The trial court denied Appellant's motion for a mistrial. *Id.* at 107.

Vaugh Felix testified that he asked Appellant to help him rob the Verizon store in Forks Township. N.T. Trial, 4/23/19, at 139. Felix testified that it was Appellant's idea to kidnap an employee in order to facilitate the robbery. *Id.* at 155. Specifically, Felix and Appellant planned to follow one of the store's employees to his home after the store closed, kidnap that employee, and force him to give Felix and Appellant access to the store so they could commit the robbery. *Id.* at 140. On November 21, 2016, Appellant and Felix executed their plan. *Id.* at 145. Both Appellant and Felix brought zip ties with them to restrain their victim and both men wore ski masks and gloves. *Id.* at 148, 153-54. Felix and Appellant followed Verizon employee Michael Davis from the store to Davis's home, but after Davis refused to get into their vehicle, Felix shot and killed Davis. *Id.* at 146-47, 150-52. After Appellant and Felix fled the scene, the two men discussed the shooting and their confusion as to why Davis refused to cooperate. *Id.* at 152-53, 155.

On April 26, 2019, the jury convicted Appellant of seven counts each of kidnapping and conspiracy to commit kidnapping; six counts of conspiracy to

commit robbery; five counts of robbery; four counts each of false imprisonment, theft by unlawful taking, and receiving stolen property; three counts each of simple assault, conspiracy to commit simple assault, and possession of a firearm with intent to employ it criminally; two counts each of attempted robbery and attempted theft by unlawful taking; and one each count of second-degree murder, robbery of a motor vehicle, conspiracy to commit robbery of a motor vehicle, attempted kidnapping, unlawful restraint, and possession of an instrument of crime.[1]

On June 20, 2019, the trial court sentenced Appellant to an aggregate term of life imprisonment, followed by a consecutive term of 113 years and 11 months to 227 years and 10 months' imprisonment. Appellant filed a timely post-sentence motion, which the trial court denied. Appellant then filed timely notices of appeal and Pa.R.A.P. 1925(b) statements at each trial court docket number. The trial court issued a Rule 1925(a) opinion addressing Appellant's issues and adopting the legal analysis set forth in its October 23, 2019 order and opinion.

A prior panel of this Court summarized the subsequent procedural history as follows:

On December 2, 2020, while Appellant's direct appeal was pending in this Court, Appellant filed an application for remand, based

---

[1] 18 Pa.C.S. §§ 2901(a)(2); 903(a)(1), 2901(a)(2); 903(a)(1), 3701(a)(1)(ii); 3701(a)(1)(ii); 2903(a); 3921(a); 3925(a); 2701(a)(3); 903(a)(1), 2701(a)(3); 907(b); 901(a), 3702(a)(1)(ii); 901(a), 3921(a); 2502(c); 3702(a); 903(a)(1), 3702(a); 901(a), 2901(a)(2); 2902(a)(1); and 907(a), respectively.

upon a claim of after-discovered evidence. Within Appellant's application, Appellant averred that his co-defendant, Vaughn Felix, "will now testify that any and all statements [Felix] made implicating [Appellant] in the Northampton County criminal homicide, attempted abduction, and commercial armed robberies were coerced or otherwise involuntary and false statements . . . and that [Appellant] is factually innocent of the [crimes]." Appellant's Application for Remand, 12/2/20, at 2.

\* \* \*

Appellant requested that we remand this case to the trial court, so that the trial court may conduct an evidentiary hearing on his after-discovered evidence claim, in accordance with Pennsylvania Rule of Criminal Procedure 720.

*Commonwealth v. Lewis*, 2020 WL 7419522, at *2 (Pa. Super. 2020) (unpublished mem.) (some citations omitted). Ultimately, this Court remanded Appellant's case to the trial court "for an evidentiary hearing to determine whether Appellant has proven, by a preponderance of the evidence, that he is entitled to a new trial." *Id.* at *3.

The trial court held a hearing on Appellant's motion for a new trial based on after-discovered evidence on April 19, 2021. Felix briefly testified that Appellant was not involved in the Davis murder. N.T. Post-Sentence Mot. Hr'g, 4/19/21, at 7-8. However, Felix also invoked his Fifth Amendment right against self-incrimination and refused to answer Appellant's other questions. *Id.* at 5-6. The trial court continued the hearing so that it could appoint Fifth Amendment counsel for Felix.

The hearing resumed on May 13, 2021. Felix refused to answer any further questions on Fifth Amendment grounds. N.T. Post-Sentence Mot. Hr'g, 5/13/21, at 5-23. Appellant moved to admit three exhibits, which he

represented were Felix's prior inconsistent statements recanting his trial testimony. *Id.* at 24. The Commonwealth objected to these exhibits, and the trial court reserved its decision on their admissibility. *Id.* at 24-25.

On July 16, 2021,[2] the trial court issued an order excluding Appellant's exhibits and denying Appellant's motion for new trial. Appellant then filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) statements at each trial court docket number.[3] On September 14, 2021, the trial court issued a supplemental Rule 1925(a) opinion adopting the legal analysis set forth in its July 16, 2019 order and its previously mentioned opinions.

On appeal, Appellant raises eleven issues,[4] which we reorder as follows:

_____

[2] We note that although the order denying Appellant's motion was time-stamped and marked on the docket on July 14, 2021, the docket entries reflect that the trial court served Appellant on July 16, 2021. *See Commonwealth v. Jerman*, 762 A.2d 366, 368 (Pa. Super. 2000) (stating that "[i]n a criminal case, the date of entry of an order is the date the clerk of courts enters the order on the docket, furnishes a copy of the order to the parties, and records the time and manner of notice on the docket" (citations omitted)); *see also* Pa.R.Crim.P. 114(C)(2)(c); Pa.R.A.P. 108(a)(1), (d)(1).

[3] Appellant filed a separate notice of appeal at each trial court docket pursuant to *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), and Pa.R.A.P. 341(a). On September 21, 2021, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513. Order, 9/21/21.

[4] We refer to the oft-cited quote from the late Judge Aldisert of the Third Circuit:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court, it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors . . . When I

*(Footnote Continued Next Page)*

- 8 -

1. Whether the trial court erred in denying the motion to suppress cell phone records and data, including location data, in that such cell phone records and data were obtained in violation of the Fourth Amendment to the United States Constitution and Article I Section 8 of the Pennsylvania Constitution?

2. Whether the trial court erred in denying the motion to suppress the cell phone extraction in that the cell telephones seized and subsequently searched were seized and subsequently searched in violation of the Fourth Amendment of the United States Constitution and Article I Section 8 of the Pennsylvania Constitution?

3. Whether the trial court erred in denying the motion to suppress with respect to the search of [Appellant's] residence . . . in that the search was undertaken in violation of the Fourth Amendment of the United States Constitution and Article I Section 8 of the Pennsylvania Constitution?

4. Whether the trial court erred in permitting the Commonwealth to introduce various records purporting to be domestic records of regularly conducted activity, including cell phone records, pursuant to Pa.R.E. 902(11) in that the purported domestic records of regularly conducted activity were not properly subject to self-authentication pursuant to Pa.R.E. 902(11) and any certification of a custodian of such records was challenged as the records did not meet the requirements of Pa.R.E. 803(6)(A)-(C)?

5. Whether the trial court erred in permitting evidence regarding threats to kill three people who were related to the subject case, including the prosecuting attorney?

---

read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Commonwealth v. Lutes*, 793 A.2d 949, 955 n.1 (Pa. Super. 2002) (citations omitted).

- 9 -

6.    Whether the trial court erred in permitting evidence of the specific identity of the named assistant district attorney alleged to be the object of a threat[?]

7.    Whether the trial court erred in permitting the Commonwealth to introduce evidence or reference to the effect that [Appellant] was known by the nickname "Trig"?

8.    Whether the trial court erred in granting the motion to join offenses charged in separate informations for trial in that such joinder was not proper under Rule 582 of the Pennsylvania Rules of Criminal Procedure?

9.    Whether the trial court erred in denying the motion for mistrial on the ground that a police witness made an improper identification in trial testimony without any basis to support any such identification?

10.   Whether the evidence was sufficient to establish the elements of the crimes charged in that the evidence was not sufficient to identify [Appellant], the evidence was not sufficient to establish the elements of murder in the second degree[,] and the evidence was not sufficient to establish the elements of kidnapping?

11.   Whether the trial court erred in denying the motion for new trial on the ground of after-discovered evidence?

Appellant's Brief at 7-8 (formatting altered).

**Motions to Suppress**

In his first three issues, Appellant argues that the trial court erred in denying his motions to suppress. Specifically, Appellant argues that the trial court erred by failing to suppress (1) cell phone records and data, including location data for the cell phones (also known as cell site location information); (2) the contents of the cell phones; and (3) evidence obtained from the search of Appellant's residence. *Id.* at 20-29.

Initially, we note that

- 10 -

our scope and standard of review of an order denying a motion to suppress are unique when we are reviewing a magistrate's decision to issue a search warrant. They differ from those cases in which we are reviewing a court's decision regarding evidence obtained without a warrant. When reviewing a magistrate's decision to issue a warrant, there are no factual findings from the trial court. Thus, we need not consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Instead, we are merely reviewing the magistrate's decision to issue the warrant. As such, our duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1080-81 (Pa. Super. 2018) (*en banc*) (citation and quotation marks omitted); *see also Commonwealth v. Harvard*, 64 A.3d 690, 696 (Pa. Super. 2013) (stating that "[a] magistrate's finding of probable cause must be based on facts described within the four corners of the affidavit[,] and our scope of review of a suppression court's ruling is confined primarily to questions of law" (citation omitted)).

Further, this Court has explained:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in *Illinois v. Gates*, 462 U.S. 213 (1983), and adopted in *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985). A magistrate is to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The information offered to establish probable cause must be viewed in

- 11 -

a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place.

***Manuel***, 194 A.3d at 1081 (footnote and some citations omitted, formatting altered).

Finally, we note that it is well settled that "[t]he fruit of the poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts. A fruit of the poisonous tree argument requires an antecedent illegality." ***Commonwealth v. Torres***, 177 A.3d 263, 276 (Pa. Super. 2017) (citations omitted and formatting altered).

<u>Wiretap Act Order</u>

Appellant argues that the trial court erred in denying his motion to suppress historical cell site location information (historical CSLI) from three cell phones because the police obtained that evidence through an order issued under the Wiretapping and Electronic Surveillance Control Act (Wiretap Act)[5] rather than a search warrant. Appellant's Brief at 20-22 (citing, *inter alia*, ***Carpenter v. United States***, 138 S.Ct. 2206 (2018)). In support, Appellant emphasizes that the Wiretap Act allows a court to issue an order based only upon a showing of reasonable suspicion, rather than probable cause.

---

[5] 18 Pa.C.S. §§ 5701-5782.

- 12 -

Therefore, Appellant contends that because the order for the 5435 phone's historical CSLI was issued under the Wiretap Act, it violated the Fourth Amendment. *Id.* at 22. Appellant further claims that the unlawfully obtained evidence for the 5435 phone tainted the historical CLSI obtained for the second and third phones (the 3074 and 4895 phones). *Id.*

Section 5743 of the Wiretap Act provides, in relevant part:

**(c) Records concerning electronic communication service or remote computing service.—**

\* \* \*

(2) A provider of electronic communication service . . . shall disclose a record or other information pertaining to a subscriber to or customer of the service, . . . to an investigative or law enforcement officer only when the investigative or law enforcement officer:

\* \* \*

(ii) obtains a warrant issued under the Pennsylvania Rules of Criminal Procedure;

(iii) **obtains a court order for the disclosure under subsection (d)**; or

\* \* \*

**(d) Requirements for court order.—**A court order for disclosure under subsection (b) or (c) shall be issued only if the investigative or law enforcement officer shows that there are **specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.** A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify the order if the information or records requested are unusually voluminous in nature or compliance with the order would otherwise cause an undue burden on the provider.

- 13 -

18 Pa.C.S. § 5743(c)(2)(ii)-(iii), (d) (emphases added).

In *Carpenter*, the United States Supreme Court examined "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records [a.k.a. historical CSLI] that provide a comprehensive chronicle of the user's past movements." *Carpenter*, 138 S.Ct. at 2211. First, the *Carpenter* Court explained that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI[,]" and obtaining location information for an individual from their wireless carrier is a search for Fourth Amendment purposes. *Id.* at 2217. Therefore, the High Court held that to obtain historical CSLI records, the government must obtain a search warrant supported by probable cause. *Id.* at 2221.

The *Carpenter* Court then concluded that a court order issued under the Stored Communications Act, 18 U.S.C. § 2703(d), fell short of the warrant requirement because that statute only required the government to demonstrate "reasonable grounds" to believe that the requested records were "relevant and material to an ongoing investigation[,]" instead of probable cause. *Id.* (citing 18 U.S.C. § 2703(d)).

Following *Carpenter*, Pennsylvania courts have examined its applicability to the Pennsylvania Wiretap Act. In *Pacheco,* this Court considered whether orders issued under Sections 5772 and 5773 of the Wiretap Act for a defendant's real-time CSLI violated the Fourth Amendment's warrant requirement. *Commonwealth v. Pacheco*, 227 A.3d 358, 370-73

(Pa. Super. 2020), *aff'd*, 263 A.3d 626 (Pa. 2021). To make this determination, the Court applied a three-part test: (1) whether a neutral, disinterested magistrate issued the orders; (2) whether the applications for the orders demonstrated probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense; and (3) the orders particularly described the things to be seized and the place to be searched. *Pacheco*, 227 A.3d at 371 (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). Ultimately, the *Pacheco* Court concluded that the Wiretap Act orders in that case were the equivalent of search warrants for Fourth Amendment purposes, because the orders satisfied the three *Dalia* factors, including the probable cause requirement. *See id.*, 227 A.3d at 371-73; *see also* 18 Pa.C.S. § 5772(b)(3) (requiring that an application for an order under that section include an affidavit of probable cause).

In *B. Davis,* a panel of this Court held that the police did not violate a defendant's Fourth Amendment rights by obtaining historical CSLI pursuant to an order for under Section 5743 of the Wiretap Act, as the police later obtained a search warrant for the same information. *Commonwealth v. B. Davis*, 241 A.3d 1160, 1171-73 (Pa. Super. 2020).

Finally, in *Wesley*, this Court examined whether an order for historical CSLI issued under Section 5743 violated *Carpenter* if that order was supported by probable cause. *Commonwealth v. Wesley*, 1865 EDA 2018,

2020 WL 865277 (Pa. Super. filed Feb. 21, 2020) (unpublished mem.).[6]  In

**Wesley**, the police obtained historical CSLI for a cell phone pursuant to an

order under Section 5743.[7]  **Id.**, 2020 WL 865277 at *2.  The trial court

granted the defendant's motion to suppress the historical CSLI because it was

obtained without a warrant.  **Id.**  The Commonwealth appealed, and this Court

reversed, concluding the Wiretap Act order satisfied **Carpenter**'s warrant

requirement because it was supported by probable cause.  **Id.** at *11 (citing

**Dalia**, 441 U.S. at 255; **Pacheco**, 227 A.3d at 371-72).

After a careful review of the officer's affidavit in support of the Wiretap

Here, the trial court concluded that because the Wiretap Act order for

the 5435 phone was supported by probable cause, it did not violate

**Carpenter**.  **See** Trial Ct. Order, 12/7/18, at 2-9.

After a careful review of the officer's affidavit in support of the Wiretap

Act order for the 5435 phone, we agree with the trial court that the affidavit

demonstrated probable cause to believe that "the evidence sought will aid in

a particular apprehension or conviction" for a particular offense.  **See Dalia**,

441 U.S. at 255.  Specifically, the affidavit stated that the cell phone records

for the 5435 phone would aid in apprehending or convicting Appellant because

he was the subscriber for that phone number, security camera footage from

---

[6] **See generally** Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[7] The police obtained warrants for historical CSLI for three other phones, therefore the trial court denied the defendant's motion to suppress with respect to those phones.  **See Wesley**, 2020 WL 865277 at *2.

one of the robberies showed one of the individuals receiving a call on his cell phone, and a "cell phone tower dump" indicated that the 5435 phone received a call at the same date and time as the individual in the security footage. *See Manuel*, 194 A.3d at 1081. Additionally, the record reflects that a neutral, disinterested magistrate issued the Wiretap Act order, and the order particularly described the items to be seized. *See Dalia*, 441 U.S. at 255. For these reasons, we agree with the trial court that the Wiretap Act order complied with *Carpenter*. *See Wesley*, 2020 WL 865277 at *11; *accord Pacheco*, 227 A.3d at 371-73. Likewise, because we conclude that this evidence was properly obtained, there was no antecedent illegality, and Appellant's fruit of the poisonous tree argument with respect to the 3074 and 4895 phones must fail. *See Torres*, 177 A.3d at 276.

<u>Search Warrants</u>

Appellant also argues that there was no probable cause justifying the search warrants for the historical CSLI for the 3074 and 4895 phones, to extract data from several cell phones seized from Appellant, and to search Appellant's residence. Appellant's Brief at 24-29. He further claims that the trial court did not have jurisdiction to issue search warrants for cell phone records located outside of Pennsylvania. *Id.* at 24. Finally, Appellant asserts that the Northampton County magistrate judge did not have jurisdiction to issue a warrant to search the cell phones when police from Northampton County submitted the phones to a lab in Lehigh County to extract data from the phones. *Id.* at 25-27.

This Court has explained that when presenting issues in an appellate brief,

> it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Pa.R.A.P. 2119(a), (b), (c). . . .

> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101.

*Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (some citations omitted); *see also Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018) (stating that "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived" (citations and quotation marks omitted)).

Here, we conclude that Appellant has failed to adequately develop his various arguments regarding the search warrants for appellate review. In support of his claims, Appellant presents only boilerplate allegations that that the averments in the affidavits do not amount to probable cause. *See Kane*, 10 A.3d at 331. Further, he does not discuss the record or include any citations. *See id.* With respect to Appellant's jurisdictional claims, he does not develop those issues with citations to the record, to indicate where the cell phone records were held or where the search was conducted. For these

reasons, we conclude that Appellant has waived these claims for appellate review.[8] *See id.*; *Cannavo*, 199 A.3d at 1289.

### Evidentiary Rulings

In his next four claims, Appellant challenges various evidentiary rulings by the trial court. Briefly, Appellant argues that the trial court erred in admitting (1) cell phone records; (2) Appellant's threats to kill three individuals involved in these cases; (3) the name of the assistant district attorney Appellant had threatened; and (4) Appellant's nickname. Appellant's Brief at 30-42, 48.

In reviewing Appellant's evidentiary claims, we are guided by the following principles:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or

_____

[8] Although jurisdiction is non-waivable, we find no merit to Appellant's boilerplate and undeveloped challenges. The trial court concluded that the judges issuing the search warrants for historical CSLI had jurisdiction pursuant to *Commonwealth v. Dougalewicz*, 113 A.3d 817 (Pa. Super. 2015), and we discern no basis upon which to find that trial court erred.

Further, the record reflects that Northampton County officers seized the cell phones pursuant to a Northampton County warrant, and requested that a lab in Lehigh County assist with their investigation. The trial court concluded that Section 8953 of the Municipal Police Jurisdiction Act applied, and we discern no basis upon which to find error. *See* 42 Pa.C.S. § 8953; *see also Commonwealth v. Bellamy*, 252 A.3d 656, 659 (Pa. Super. 2021) (noting that narcotics seized by Lackawanna County police pursuant to a search warrant were sent the Pennsylvania State Police Wyoming Crime Lab for further testing).

misapplication of the law, or the exercise of judgment[,] that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

Relevance is the threshold for admissibility of evidence.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citations omitted and formatting altered), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

When the issue concerns the "proper interpretation" of the Pennsylvania Rules of Evidence, "the question is a legal one, which means our standard of review is *de novo*, and our scope of review is plenary. In interpreting the meaning of Pennsylvania Rules of Evidence, we ascribe to the words of those rules their plain and ordinary meaning." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations omitted). Finally, it is well settled that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted).

Cell Phone Records

Appellant argues that the trial court erred in admitting cell phone company records under the hearsay exception for self-authenticating business records. Appellant's Brief at 30-38 (citing Pa.R.E. 803(6), 902(11)). In support, Appellant claims that at the hearing on his motion *in limine*, he presented evidence that phone companies do not keep call records and location data for individual cell phone subscribers in the ordinary course of business, and instead generate those reports for law enforcement upon request. *Id.* at 31-34 (citing N.T. Mot. Hr'g, 1/17/19, at 6-42; 52-54). Therefore, Appellant reasons that these cell phone records do not qualify as self-authenticating certified domestic records of regularly conducted business activity and are inadmissible hearsay. *Id.* at 32-33.

Appellant notes that "[i]nvestigators frequently use cell phone tower information in an attempt to place a suspect near a crime scene," which is known as historical cell site analysis. *Id.* at 31, 36. Appellant contends that his expert witness established that "[t]he precise location of the cell telephone cannot be known with the use of historical call detail records." *Id.* at 35. Therefore, Appellant argues that the cell phone records were not relevant, unfairly prejudicial, and would tend to mislead the jury because they could not "precisely determine a caller's location" and "[t]here is no basis even to infer that any particular cell phone call used the closest tower or the nearest tower". *Id.* at 36-38. For these reasons, Appellant concludes the trial court abused its discretion in admitting the cell phone records into evidence.

Rule of Evidence 902 states, in relevant part:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

> **(11) Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. No. 76. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

Pa.R.E. 902(11).

The Pennsylvania Rules of Evidence define hearsay as an out-of-court statement offered for the truth of the matter asserted. *See* Pa.R.E. 801(c). Generally, hearsay evidence is inadmissible "except as provided by [the Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Rule 803(6) provides the following exception to the hearsay rule for business records:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> *   *   *
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
>> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation,

and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

Pa.R.E. 803(6)(A)-(C).

In ***Commonwealth v. McEnany***, 732 A.2d 1263 (Pa. Super. 1999), this Court addressed the admissibility of Cellular One's computer-generated cell phone call records. ***McEnany***, 732 A.2d at 1272. The ***McEnany*** Court concluded that because the Commonwealth established that Cellular One's "computer systematically and contemporaneously creates a record of every telephone call made on its system" for billing purposes, the phone records were business records, and therefore admissible as an exception to the hearsay rule.[9] ***Id.*** at 1272-73. Further, the ***McEnany*** Court observed:

> The fact that the records had to be translated to English [from Cellular One's electronic data files] before their use at trial does not negate the fact that the records were created in the regular course of Cellular One's business at the moment the telephone calls were made. Hence, the records themselves were not prepared for the trial of this case. If we were to accept [the defendant's] narrow interpretation of the business records exception to the hearsay rule, then otherwise trustworthy evidence would be excluded simply because it needed to be translated so as to be understandable by the finder of fact. This result is in direct contravention of the purpose of the business records exception to the hearsay rule; *i.e.*, to permit the admission of records made in the regular course of business where

---

[9] The ***McEnany*** Court ruled that the Cellular One's records were admissible under the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108. ***McEnany***, 732 A.2d at 1272-73. Subsequently, on January 1, 2002, our Supreme Court adopted Pa.R.E. 902(11). Nevertheless, we conclude that the holding of ***McEnany*** is applicable to this case.

the sources of information, method and time of preparation are such as to justify its admission.

***Id.*** at 1273 n.3.

This Court has also stated that "there exists no legitimate dispute regarding the reliability of historical cell-site analysis," and held "that scientific evidence concerning historical cell-site analysis is not novel, and its admissibility is not subject to the requirements of ***Frye*** [***v. United States***, 293 F. 1013 (D.C. Cir. 1923)]." ***Commonwealth v. Nevels***, 203 A.3d 229, 241 (Pa. Super. 2019).

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's opinion regarding the admission of the cell phone call records. ***See*** Trial Ct. Op., 10/23/19, at 14-21. Specifically, we agree with the trial court that the cell phone records were admissible under the business records exception to the hearsay rule. ***See id.*** at 14-19; ***see also*** Pa.R.E. 803(6), 902(11); ***LeClair***, 236 A.3d at 78; ***McEnany***, 732 A.2d at 1272-73, 1273 n.3. We also agree with that the trial court's conclusion that the cell phone records were admissible because the records were relevant and their probative value outweighed any danger of unfair prejudice or misleading the jury. ***See*** Trial Ct. Op., 10/23/19, at 19-21; ***see also LeClair***, 236 A.3d at 78; ***Nevels***, 203 A.3d at 241. Therefore, Appellant is not entitled to relief on this issue.

<u>Appellant's Threats</u>

Appellant argues that the trial court erred in admitting his statement that he wanted the Assistant District Attorney killed without redacting the prosecutor's name as evidence of Appellant's consciousness of guilt. Appellant's Brief at 39-40. Appellant contends that the prosecutor's name, was not relevant as to whether the statement implicated Appellant's consciousness of guilt. *Id.* Appellant also claims that the inclusion of the prosecutor's name was unfairly prejudicial because the attorney represented the Commonwealth at Appellant's trial and this evidence "tended to cause a distinct risk that jurors [would] sympathize[] with the Assistant District Attorney and br[ing] that prejudice to bear against [Appellant]." *Id.* at 39-40.

Relatedly, Appellant argues that the trial court erred in admitting alleged death threats that Appellant made against three individuals involved in these cases. *Id.* at 48. Appellant asserts that "[t]he subject threats did not fit any of the exceptions to the proscription against prior bad acts. They did not relate to motive or intent or a common scheme. They were not related to the charged crimes at all. Accordingly, they are not relevant." *Id.* Appellant also contends that even if the threats were relevant, their prejudicial effect outweighed their probative value. *Id.*

Rule 404 provides in relevant part:

**(b) Other Crimes, Wrongs, or Acts.**

> (1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

"[A]ny attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." ***Commonwealth v. R. Johnson***, 838 A 2d 663, 680 (Pa. 2003) (citations omitted). "[R]egardless of whether or not [the defendant's] statements constituted threats, it is apparent that they were intended to influence [the witness's] testimony at trial. Accordingly, they are relevant." ***Id.***

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue.[10] ***See*** Trial Ct. Op., 10/23/19, at 21-22. Specifically, we agree with the trial court that the prosecutor's identity was relevant to establish Appellant's consciousness of guilt because she was

---

[10] We note that the trial court opinion contains a typographical error referring to its orders of July 19, 2018 and March 7, 2019 denying Appellant's motion *in limine*. Our review of the record indicates that the trial court denied Appellant's motion *in limine* to redact the prosecutor's name from the evidence about the threat against her on February 1, 2019. ***See*** Trial Ct. Order, 2/1/19, at 1-2.

directly involved in Appellant's case. *See id.*; *accord R. Johnson*, 838 A 2d at 680.

As for Appellant's claim that the death threats against three individuals involved in these cases were inadmissible prior bad acts evidence, Appellant only presents bald assertions in support of this claim. Further, Appellant has failed to develop his arguments with individual discussions of the three threats or include citations to relevant legal authorities and to the record. Therefore, we conclude that Appellant has waived this issue on appeal. *See Cannavo*, 199 A.3d at 1289; *Kane*, 10 A.3d at 331.

Appellant's Nickname

Appellant argues that the trial court erred in admitting evidence establishing that Appellant's nickname is "Trig".[11] Appellant's Brief at 41-42. Appellant contends that the "Trig" nickname was not relevant and was unduly prejudicial because "Trig" "impermissibly suggested [a] violent character" in a case involving firearms. *Id.* at 41-42.

In *Commonwealth v. Williams*, 58 A.3d 796 (Pa. Super. 2012), the defendant argued that his nickname "Killa" should not be admitted at his murder trial because it was overly prejudicial as the jury could infer that it meant "killer." *Williams*, 58 A.3d at 800. On appeal, this Court affirmed the trial court's decision to admit the defendant's nickname as evidence at trial, concluding that "the evidence's probative value in identifying [the defendant]

---

[11] Appellant's nickname is spelled both "Trig" and "Trigg" in the record. We use "Trig" throughout for consistency.

outweighed any prejudice that resulted from the use of his nickname." ***Id.*** at 800-01.

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue. ***See*** Trial Ct. Op., 10/23/19, at 22-25. Specifically, we find that the trial court properly concluded that the nickname "Trig" was relevant to prove identity, and that its probative value outweighed its potential for unfair prejudice. ***See id.*** at 25; ***see also LeClair***, 236 A.3d at 78; ***Williams***, 58 A.3d at 800-01.

### Consolidation of Charges

Appellant next claims that the trial court abused its discretion in consolidating his seven cases for trial. Appellant's Brief at 43-47. Specifically, Appellant argues that he suffered prejudice because the risk of unfair prejudice from admitting evidence from the individual cases in a joint trial for all cases outweighed the probative value of that evidence. ***Id.*** at 44-46 (citing ***Commonwealth v. Morris***, 425 A.2d 715, 720 (Pa. 1981); Pa.R.E. 404(b)). Appellant argues that the consolidation of the seven separate cases for trial resulted in the jury improperly inferring Appellant had a criminal disposition and improperly cumulating the evidence from the separate cases to convict Appellant where a jury would not have do so if the cases were tried separately. ***Id.*** at 47. Therefore, Appellant concludes the trial abused its discretion in consolidating the separate cases for a joint trial.

This Court has explained that:

- 28 -

> The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence. Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant.

*Commonwealth v. J. Johnson*, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (citations and quotation marks omitted), *appeal denied*, 242 A.3d 304 (Pa. 2020).

> Pennsylvania Rule of Criminal Procedure 582 provides, in relevant part:
>
> (1) Offenses charged in separate indictments or informations may be tried together if:
>
>> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>>
>> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1)(a)-(b); *see also* Pa.R.Crim.P. 583 (providing that "[t]he court may order separate trials of offenses . . ., or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together").

> This Court has explained:
>
> Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

Pursuant to this test, a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other.

Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. Nevertheless evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

Additionally, where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence.

*Commonwealth v. Dozzo*, 991 A.2d 898, 902-03 (Pa. Super. 2010) (citations omitted and formatting altered).

In *Dozzo*, the Court emphasized that were "numerous similarities" between the seven robbery cases that were consolidated for trial. *Id.* at 903. Specifically, the Court noted that they each occurred at or near train stations in Philadelphia, took place during off-hours for those stations, involved similar allegations about the circumstances of each theft, and the description of the robber was similar in each case. *Id.* at 903. Therefore, the *Dozzo* Court concluded that consolidation was proper and did not cause the defendant undue prejudice. *Id.* at 904.

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op., 10/23/19, at 25-28.

Specifically, we find that the trial court properly concluded that the evidence in each of the cases would be admissible in separate trials for the cases, the jury could separate the evidence and there was no danger of confusion, and Appellant was not unduly prejudiced. *See id.* at 26-28; *see also J. Johnson*, 236 A.3d at 1150; *Dozzo*, 991 A.2d at 902-04.

### Motion for Mistrial

Appellant argues that the trial court erred in denying his motion for a mistrial and instead issuing a curative instruction after Detective Leauber identified Appellant as an individual depicted in a video of one of the robberies. Appellant's Brief at 49-50. Appellant contends that curative instruction was insufficient to cure the prejudice from the officer's testimony because identification was a central aspect of his defense. *Id.*

This Court has explained that

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) (citations omitted).

"When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, the law presumes that the jury

will follow the instructions of the court." ***Id.*** (citation omitted and formatting altered). Courts "must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." ***Commonwealth v. Manley***, 985 A.2d 256, 266 (Pa. Super. 2009) (citations omitted).

In ***Commonwealth v. McClain***, 472 A.2d 630 (Pa. Super. 1984), the defendant moved for a mistrial after the victim twice named the defendant as her assailant during her testimony, even though the Commonwealth had previously stipulated that the victim would not be asked to identify the defendant during trial. ***McClain***, 472 A.2d at 633. The trial court denied the defendant's motion for a mistrial, struck the victim's testimony identifying defendant as her assailant, and instructed for the jury to disregard that testimony. ***Id.*** This Court affirmed, concluding that "the Commonwealth's clarification of the victim's testimony coupled with the prompt and thorough cautionary instruction given by the court, removed any possible prejudicial effect." ***Id.*** at 634.

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue. ***See*** Trial Ct. Op., 12/20/19, at 5-7. Specifically, we find that the trial court properly concluded that its "curative instruction was sufficient to remove any prejudice" to Appellant. ***See id.*** at 6; ***see also Parker***, 957 A.2d at 319 (stating that "the law presumes that the jury will follow the instructions of the court"); ***McClain***, 472 A.2d at 633-34.

## Sufficiency

Appellant also challenges the sufficiency of the evidence on several grounds. Briefly, Appellant argues that the evidence was insufficient to (1) identify him as the perpetrator; (2) establish the element of kidnapping that the victims were moved a substantial distance or confined for a substantial period of time; and (3) establish that the element of second-degree murder that he was an accomplice to the killing of Michael Davis. Appellant's Brief at 16-19.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

Sufficiency: Identification

Appellant challenges the sufficiency of the evidence identifying him as the perpetrator. Specifically, Appellant claims that the evidence was insufficient to establish his identity because "the trial court relied heavily upon the trial testimony of Vaughn Felix" in denying his post-sentence motion challenging the sufficiency of the identification evidence. Appellant's Brief at 17. Appellant claims that Felix "will now testify that the information he gave police implicating [Appellant], and that his trial testimony, were false. This undercuts the sufficiency substantially." **Id.**

This Court has explained that

[E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

**Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations and quotation marks omitted).

Appellant's argument regarding the identification evidence relies on his claim of after-discovered evidence and does not challenge the sufficiency of the evidence presented at trial. **See Palmer**, 192 A.3d at 89 (stating that when "reviewing the sufficiency of the evidence, we must determine whether the evidence **admitted at trial** . . . [was] sufficient to prove every element

of the offense beyond a reasonable doubt" (citation omitted and emphasis added)). Therefore, we conclude that because Appellant relies on evidence that was not presented at trial, he has not presented a proper sufficiency claim regarding the identification evidence at trial.

Further, to the extent Appellant challenges the reliability of the Felix's identification at trial, that claim goes to the weight of the evidence, not the sufficiency. *See Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013) (stating that an argument as to the "credibility of the Commonwealth's chief witness" is a challenge to the weight, not the sufficiency, of the evidence); *see also Commonwealth v. D. Davis*, 799 A.2d 860, 864 (Pa. Super. 2002) (reiterating that weight and sufficiency claims "are discrete inquiries"). Appellant did not challenge the weight of the evidence at sentencing or in a post-sentence motion, and he did not include this issue in his Rule 1925(b) statement. Therefore, Appellant waived any challenge to the weight of the evidence. *See Griffin*, 65 A.3d at 938 (stating that the defendant's weight of the evidence claim was "waived for failure to present claim in the lower court, either orally or in writing before sentencing or in a post-sentence motion, and failure to present argument in court-ordered statement, pursuant to Pa.R.Crim.P. 607; Pa.R.A.P. 1925(b)(4)(vii)" (citation omitted)); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

## Sufficiency: Kidnapping

Next, Appellant argues that there was insufficient evidence to support his convictions for kidnapping because the evidence did not establish that he moved the victims a substantial distance or confined the victims for a substantial period of time. Appellant's Brief at 18-19. However, in his brief, Appellant has failed to specify which of the seven kidnapping convictions he intends to challenge on appeal. Further, even assuming that Appellant's claim relates to all seven counts, Appellant has failed to develop his arguments by citing to the record or discussing the specific evidence supporting each charge. It is Appellant's responsibility to develop his arguments for appellate review, and it is not the role of this Court to scour the record for support for Appellant's claims. *See Cannavo*, 199 A.3d at 1289. Therefore, this claim is waived. *See id.*; *Kane*, 10 A.3d at 331.

## Sufficiency: Murder

Lastly, Appellant challenges the sufficiency of evidence to sustain his conviction for second-degree murder. Appellant's Brief at 17-18. Appellant contends that the evidence only establishes that Appellant was present when Felix shot and killed Michael Davis, and that "mere presence at the scene of the crime is not enough to establish accomplice liability." *Id.* at 18 (citation omitted).

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). "A criminal homicide constitutes murder of the second degree when it is committed while

defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). For the purposes of second-degree murder, "perpetration of a felony" is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, . . . burglary or kidnapping." 18 Pa.C.S. § 2502(d).

Section 306 of the Crimes Code defines accomplice liability as follows:

**(a) General rule.—**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another.—**A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.—**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.—**When causing a particular result is an element of an offense, an accomplice in the conduct

causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

\*   \*   \*

**(g) Prosecution of accomplice only.—**An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S. § 306.

When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.

\*   \*   \*

The statute defining second degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1023 (Pa. Super. 2002) (*en banc*) (citations omitted and formatting altered).

The **Lambert** Court concluded that the evidence was sufficient to sustain a conviction for second-degree murder when the defendant acted as an accomplice to the burglary that resulted in the victim's death because he "drove [the co-d]efendant to the scene of the crime, waited during the commission of the crime and facilitated the flight afterwards." **Id.**

However, this Court has acknowledged:

A defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the scene. However, the circumstances change if there is additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. The amount of aid need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

**Commonwealth v. Toritto**, 67 A.3d 29, 35 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that this testimony was sufficient to establish Appellant was an accomplice to the murder of Michael Davis. **See** Trial Ct. Op., 10/23/19, at 5-9. Specifically, we agree that there was sufficient evidence to support Appellant's second-degree murder conviction under a theory of accomplice liability and that Appellant was not "merely present" at the scene of Davis's murder. **See id.** at 8-9; **see also Lambert**, 795 A.2d at 1023. Therefore, no relief is due on Appellant's sufficiency claim for his second-degree murder conviction.

**New Trial Based on After-Discovered Evidence**

In his final claim, Appellant argues the trial court erred by denying his motion for a new trial based on after-discovered evidence. Appellant's Brief at 51-69. By way of background to this issue, although Appellant's co-conspirator Vaugh Felix implicated Appellant in his trial testimony, Felix purportedly signed a written recantation after trial, claiming that he had been manipulated and coerced into giving false testimony. *Id.* at 51-52. Appellant contends that Felix's statement is after-discovered evidence that would likely compel a different verdict and warrants the grant of a new trial. *Id.* at 53. Further, Appellant notes that at the April 19, 2021 hearing on his motion for a new trial, Felix testified that neither he nor Appellant were involved in the November 21, 2016 Davis homicide. *Id.* at 54-56, 62 (citing N.T. Hr'g, 4/19/21, at 7-8). For these reasons, Appellant contends that the trial court erred in denying his motion for a new trial based on after-discovered evidence.[12]

_____

[12] Appellant also argues that the trial court erred in not assessing Felix's invocation of his Fifth Amendment rights on a question-by-question basis to determine if he had a "legitimate Fifth Amendment privilege" with respect to each question. Appellant's Brief at 56-62. Further, Appellant contends that the trial court erred by concluding Appellant's exhibits were hearsay and declining to admit them. *Id.* at 64-69. However, Appellant did not include these claims in his statement of questions. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Therefore, we conclude that these claims are waived. *See id.*; *Commonwealth v. Hodge*, 144 A.3d 170, 172 n.4 (Pa. Super. 2016).

"When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa. Super. 2010) (citation and quotation marks omitted).

Further, in order to prevail on after-discovered evidence claim:

[the defendant] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

*Id.* at 363 (citations omitted and formatting altered).

Additionally, our Supreme Court has recognized that "recantation evidence is notoriously unreliable, and where it involves an admission of perjury, it is the least reliable source of proof." *Commonwealth v. Hannibal*, 156 A.3d 197, 222 (Pa. 2016) (citing, *inter alia*, *Commonwealth v. Henry*, 706 A.2d 313, 321 (Pa. 1997)). "The trial court has the responsibility of judging the credibility of the recantation. Unless the trial court is satisfied that the recantation is true, it should deny a new trial." *Henry*, 706 A.2d at 321 (citations omitted).

The trial court concluded that Felix's brief testimony was insufficient to meet Appellant's burden that the after-discovered evidence would result in a

different verdict because recantation testimony is "exceedingly unreliable". **See** Trial Ct. Order, 7/16/21, at 3-4.

Based on our review of the record, we discern no abuse of discretion in the trial court's denial of Appellant's motion for a new trial. **See Padillas**, 997 A.2d at 361. Specifically, we conclude that the trial court did not abuse its discretion in concluding that Felix's recantation testimony was not credible. **See Hannibal**, 156 A.3d at 222; **Henry**, 706 A.2d at 321. Therefore, Appellant failed to prove, by a preponderance of the evidence, that the after-discovered evidence would likely result in a different verdict, and he is not entitled to relief on this claim. **See Padillas**, 997 A.2d at 363.

Accordingly, Appellant is not entitled to relief. For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2022